Good morning, everyone. So we have these cases divided. The first appeal that we're going to hear from is the appeal from denial of the motion to intervene in the Harvey class action. So Mr. Humanic, you may begin. Good morning, your honors, and may it please the court, Mark Humanic on behalf of Proposed Intervenors, and I'd like to reserve five minutes of my time for rebuttal. Private is a unique statute, so there are many issues before you. I will focus on what I see as the three anchors to the clear sailing agreement that the Harvey parties negotiated at the expense of the state. One, no Article III standing. Two, no supplemental jurisdiction. And three, the irreconcilable double standards that were used to deny intervention to the state's true proxy, Tracy Chen, who was the impetus for this settlement. So first, Article III standing. I just ask you this. We're looking at the appeal of the district court's denial of the motion to intervene, which would be an error on Rule 24 determination. How do your arguments on subject matter jurisdiction and statutory jurisdiction, how do they relate to the decision we have before us? Yes, your honor. Subject matter jurisdiction is a fundamental prerequisite to any intervention by Chen as a PAGA proxy. So it is necessary for there to be initial subject matter jurisdiction over the PAGA claim in order for Ms. Chen to have any grounds to intervene on the PAGA claim. So without fundamental subject matter jurisdiction for a law enforcement claim to be litigated in federal court, Chen would have no basis to intervene as a party. Just like Mr. Harvey has no basis to bring the law enforcement claim a generalized grievance on the state's behalf in federal court to begin with. So are you arguing that you have no basis to intervene? Because Mr. Harvey didn't have subject matter, didn't have standing? I guess I'm confused. Well, that is correct. If Mr. Harvey has no subject matter jurisdiction over the expanded PAGA claim, then Chen has no basis to intervene. So you agree with the district court then? So then you would be agreeing with the district court that there was no basis to intervene and that the district court was correct in denying your motion. Is that what you're telling us? No, not precisely, Your Honor. I'm saying only if there is subject matter jurisdiction over the PAGA claim, then it was error for the district court to deny intervention to the state's true proxy, Tracy Chen. So there's first a fundamental question over whether there's article three standing in subject matter jurisdiction for the PAGA claim. If there is, then the district court erred by not allowing Chen, who was permanently assigned the right to prosecute this claim by the LWDA, not allowing her to intervene. So first we have to evaluate the threshold hurdle. Can a federal court even reach the merits of intervention, let alone the final judgment? So we have to pass that threshold hurdle initially. And only if that's passed, and that's Harvey's burden to show. It's not Chen's. It's Harvey's burden to show that there's article three standing in subject matter jurisdiction for the expanded PAGA claim. He has to show it for each of his individual claims, not just the class claims. So the burden is on Harvey. If he can show that, then we get to the subject of intervention. Isn't this more of an argument that goes to the approval and release of the PAGA claims as opposed to intervention? Shouldn't you be addressing the standard for intervention at this point? No, Your Honor. Again, just to reiterate, subject matter jurisdiction is a threshold inquiry. A federal court cannot reach the merits, whether of the intervention complaint of Tracy Chen, or of whether it can reach the merits of the PAGA settlement itself. It needs to have subject matter jurisdiction. Your argument, as I understand it, is because Harvey didn't have jurisdiction over the expanded PAGA claim, it was necessary that Chen had a right to intervene. And that's why the district court erred. So again, it's a two-prong argument. My fundamental argument is that no federal court has subject matter jurisdiction over a PAGA claim, because by definition, it has no individual component. It's just a generalized grievance. So that's the fundamental premise of an appeal on subject matter jurisdiction. But assuming there's subject matter jurisdiction over the PAGA claim, then we're saying the district court erred by not allowing the true proxy who was authorized to bring it to intervene. Certainly, we have any number of cases where the federal courts have had jurisdiction over both the PAGA claim and the class action involving the same common nucleus of operative facts. We have a number of those cases, don't we? Well, there have been cases, but none of those cases address the jurisdictional issue that Chen is bringing here today. So a jurisdictional issue not raised by a district court or by a court of appeal does not indicate that no jurisdictional defect existed. And we cite to the Arizona case versus Wynn in our reply brief that notes that. So just because it's always been done and has not been addressed does not stand for the principle that no defect existed. I thought Magadia held, there was an article three standing for the PAGA show article three standing if it because they were injured or if they were injured. Magadia did not so hold your honor. And in fact, if you look at footnote five of Cecile, it expressly says the panel in Magadia did not reach whether there was article three standing over the PAGA claim. The panel in Magadia only reached whether there was article three standing for the individual class members to bring a claim for damages under 226. And since that issue was found on the merits that they could not prove that violation, the panel in Magadia never reached a separate question of whether there was standing to bring a PAGA claim over the inaccurate wage statement violations. And Cecile again expressly states that in footnote five. So is your argument that a PAGA claim can never be brought in federal court? That is correct your honor. From a fundamental premise, there is no individual component to a PAGA claim. So no individual harm, no standing. We have to look at what the PAGA plaintiff is doing. He's standing into the shoes of the LWDA. He's bringing in enforcement action on behalf of the general public capacity. And in what the California legislature has done, it has authorized PAGA plaintiffs who suffer no injury of their own to bring in unbounded claim in state courts, standing in the shoes of the LWDA. And that's a general experience. Magadia only said that Magadio lacked standing because he did not suffer injury. There has to be an overlap of people who are, say, agreed parties under PAGA and separate article three injury and people who fall within the class. So my question is why isn't there supplemental jurisdiction in this case? Because it's a fundamental distinction between the capacity that the plaintiff is bringing his claims. On his class claims, he's bringing a suit for individual compensatory damages. And we don't challenge his article three standing to bring individual claims for individual damages in federal court. But in the PAGA claim, he's asking to vindicate a separate interest, a different primary right. And that's the sovereign's right to enforce the labor code. So it's a distinct primary right from his underlying distinct primary right to make compensation for injuries that he suffered at the hands of Morgan Stanley. So you have to examine them as two distinct primary rights. The individual claims seek individual damages relief. The public prosecutor representative PAGA action is not seeking individual relief. In fact, in Kinala, this court said there is no individual component. For the very simple fact, they didn't have to look at the complaint. The very nature of PAGA is such that you're not seeking any sort of individual relief. You're seeking relief on behalf of the state. Don't the PAGA representatives receive a portion of the civil penalties? Yes, they do, Your Honor. But what they receive it for is not because of any individual injury they suffered. They receive a portion of the civil notes as a service incentive to perform a service for the state. That has no individual compensatory component for an injury they suffered. It's a totally separate type of interest. And it's a non-cognizable one for article three purposes to establish standing. And to follow up on the distinct primary rights, this also ties into why there is no supplemental jurisdiction over the PAGA claim. And again, it's because while it's often that practitioners have, you know, joined them together at the hip, there was no requirement that they be do so because a PAGA claim is not at risk of claim preclusion if it's not joined together. And if you go back to Gibbs, in the case that cites from 1933, Hearn versus Oursler, the very purpose of supplemental jurisdiction is to allow a federal court to provide complete compensation for a single injury. Doesn't supplemental jurisdiction allow the federal court to hear a claim over which it has no original jurisdiction? Yes, that's true. If it, one, derives from a common nucleus of operative fact, but two, that it's required to be tried in a single proceeding. So it can be a claim that they don't have original. That's the very definition of a supplemental claim is one that doesn't come within the original jurisdiction. The question becomes under supplemental jurisdiction, is it required to be joined together? Because if they weren't brought together, there would be a risk of claim preclusion to either the original claim or the supplemental claim if they weren't joined in a single proceeding. Well, I thought the actual test for supplemental jurisdictions that would normally be tried together. I didn't think that the test was in terms of stating it was mandatory that the claims to be tried together. Because, I mean, in that case, when would a district court have discretion to refuse to accept claims and exercise supplemental jurisdiction? If it's mandatory, it would seem that the district court would always have to do that. Well, first you have to go through the 1367a analysis. Is the original and supplemental claim part of the same case or controversy? Once you pass the 1367a bar. Do they share a common nucleus of operative facts? So here it seems that the class claims and the poverty claims all arise from alleged labor violations. The Morgan Stanley financial advisors who alleged they were required to pay for business expenses and they weren't reimbursed and that this is a violation of both the class claims and the poverty claims seem to arise from those same allegations. Is there some other way we should look at them and conclude that they don't arise from the same nucleus of operative facts? Yes, it's a two-pronged requirement. That's just giving all of the credence to whether they derive from a common nucleus of operative fact. In Kuno, it dressly discusses this because there the plaintiff taxpayers had a bunch of that they had satisfied article three standing on but there was one non-justiciable claim that they did not satisfy constitutional standing on and the Supreme Court said you have to show article three standing for each and every claim you brought. The common nucleus of operative fact test does not absolve the determination of whether there's article three standing to bring the in this case the supplemental claim. So it's not just so your argument is that the PAGA representatives or the PAGA claimants have no standing because they have no injury. Is that what you're saying? It's two-pronged. It's they have no individual injury that they're pursuing in the PAGA claim and when they are standing in the shoes of the state they're pursuing a and then third is there's the redressability problem is that civil penalties do not compensate the aggrieved employees for any individual injuries they suffered. It's just a service payment. So it's also a third requirement that they they failed to satisfy as well. Well assuming that we read Magadia as saying at a PAGA claimant a person aggrieved by a particular labor code violation has an injury for article three purposes and that's redressable because of the portion of the penalties. Does that mean that there's supplemental jurisdiction here? I don't believe so still your honor because again it's that claim preclusive aspect of supplemental jurisdiction that also must be satisfied and it can't be satisfied. We know because PAGA allows the representative action to always be brought separately from individual claims or class claims. So there's no requirement that they'd be brought together and there's no risk if they're not joined together that the class claims are at risk of preclusion based on the PAGA judgment or vice versa that the class judgment would somehow preclude the PAGA claim. And what's your best case for your class preclusion your claim preclusion theory of the case you cited had to do with just so so it's Gibbs and Gibbs goes back to Hearn versus Auschler 289 U.S. 238 on on that fundamental requirement that's the nature of how supplemental jurisdiction came to be. And I would like to reserve the balance of my time unless there are additional questions for rebuttal. All right thank you. Let's see I guess who goes first here Morgan Stanley. Your honor Michael Rubin I'd like to go first for Mr. Harvey. All right Mr. Rubin you go next. Thank you Michael Rubin and please the court and and thank you all for accommodating me. The I am happy to address each of the arguments that were just made for a fairly radical reformation of existing Ninth Circuit law but let me start out by reiterating the fairly narrow issue before the panel on this first appeal and that's simply whether Judge Oreck abused his denying mandatory intervention to proposed objector Tracy Chen to comment or object to the PAGA portion of the party's settlement. This first appeal has nothing to do with Mr. Lucadano because it is exclusively focused on PAGA and Mr. Lucadano never never exhausted never filed a notice. This first appeal also has nothing to do with permissive intervention because Ms. Chen never sought permissive intervention at least not until her reply brief. So just a question of abusive discretion and and certainly applying the standards that this court has applied countless times Judge Oreck was well within his discretion in denying intervention uh because as as he pointed out whatever interest Tracy Chen may or may not have had um the interest of the real party interest the LWDA were adequately presented here and Ms. Chen was permitted to file briefs, challenge the notice, argue orally. There was absolutely nothing that Ms. Chen no argument that Ms. Chen sought to present to Judge Oreck that he didn't allow her to present in writing and orally. Now ironically the two arguments that Ms. Chen did not present to Judge Oreck were the arguments that that we just heard now. There was no argument in the intervention motion about article three or about supplemental jurisdiction. It was all about the fairness of the PAGA settlement and and whether it was appropriate to allow Mr. Harvey to settle a case that included the the full PAGA term. Now whether or not... Of course. Would the LWDA have the right to intervene as a right given that it's it's interest it's being represented by Chen? I'm sorry. The state or the LWDA's agency would either of them have the ability or the right to intervene as a matter of right in this case? Right. This panel and Magadia said no. I think that was a mistake. I think what Magadia meant to say is that PAGA does not expressly create a right of the LWDA to intervene. The LWDA could have sought to intervene under rule 24 under the usual criteria that Ms. Chen's application to intervene was subject to. It had to demonstrate the the protectable interest the adequacy of of the existing representation and and the timeliness. But the LWDA which under PAGA is entitled to notice of any settlement and did in this case receive notice chose not to object. It's true that the LWDA filed an amicus brief on appeal but the LWDA did not articulate any objection whatsoever to this settlement during the time period it was entitled to present its position to Judge Orrick. It didn't need to intervene in order to present its position to Judge Orrick. Under the statute it's it's permitted to do so as a matter of right. It just chose not to. Now the reason these article three arguments don't even even though they're incorrect and require the reverse of a lot of sorts of existing non-circuit cases is because this settlement resolved the class claims as well as the PAGA claim and counsel is just acknowledged that Mr. Harvey certainly had article three standing in order to pursue the class claims and the layer code. The class plaintiffs versus Seattle case makes clear that for purposes of settlement a trial judge can accept a release of claims where otherwise the judge might not have subject matter jurisdiction over those claims. So there's no reason why this panel even needs to reach the article three issues let alone the the appropriateness of the settlement. But of course there's article three standing and and it's as Judge Ikuda pointed out that's really the heart of Magadia's analysis. You've got the three standards the three requirements for article three. Is there injury in fact? Is it are the injuries fairly traceable and is injury redressable? What this panel did in Magadia is it said no is to some and that is the bonding determination of this court. It's also certainly right there's no question that that a PAGA plaintiff is allowed to pursue those claims because as the panel pointed out in Magadia that plaintiff has suffered the labor code injury that is the heart of the civil penalties and to say that there's no article three standing to recover civil penalties under PAGA would mean that a plaintiff never has article three standing to pursue civil penalties under any statute and that's not the law and has never been the law. Ultimately Judge Orr acted within his discretion in denying intervention. He considered all of the arguments. He concluded the PAGA settlement was fair that the interests of Ms. Chen were adequately represented and that should be the end of this first appeal which is limited to the question of whether it was abuse of discretion to grant intervention. If the panel has no questions about that I'd like to reserve the rest of the time for for the other appeals and some of the substantive issues they raise. All right thank you counsel and we'll go to Mr. Livingston on behalf of Morgan Stanley. Good morning and may it please the court. I'm going to take issue with one thing that Mr. Rubin just said and that has to do with the LWDA. I do not believe that they actually have a right to intervene here. They have no actual interest and Magadia makes that clear when it talks about a full assignment. The LWDA had the opportunity to do an investigation both for Chen's letter and also for Harvey's letter. It chose not to do anything. Once it chose not to do anything there was full assignment not to just one PAGA plaintiff as Mr. Humanik would have it but to both PAGA plaintiffs. They both have the ability to prosecute on behalf of the state of California. Once the LWDA gave up that right it gave up the opportunity to serve as a gatekeeper. In fact the statute itself does not give them any rights in connection with settlement other than to receive notice of the settlement itself and that's for purposes of keeping track of funds coming to the LWDA as a result of the settlement. The statute makes very very clear that the court has the obligation and only the court has the obligation to be the quote gatekeeper of the settlement and so the LWA did not have that opportunity to come into the case nor did it actually try to come into the case despite having multiple opportunities over a series of years to do so. I want to touch upon one issue with respect to article 3 standing and just to make clear what I believe this panel already knows and that if Mr. Humanik's argument were to prevail there would never be a PAGA plaintiff who would have article 3 standing in the federal court and that is indeed a very radical position in a position that would make no sense and not be justified by the language of Magadha or of any of the other cases that the court has addressed where the court has addressed these issues. The overall effect would be effectively to say that for the past 18 years when federal courts have been wrestling with PAGA and class cases which is how long we've been living with now they have not had the authority to do so and that is not a holding that any court district or the ninth circuit has reached over the course of that entire 18 year period. One issue that's implied in what Mr. Humanik is arguing is that there is no basis for prudential standing with respect to Mr. Harvey and again that is not accurate. The position that has been taken in and repeatedly in the briefing both in this intervention appeal and the other appeals is that the claim need because it does not qualify as a QITAM suit then there's no ability for there to be prudential standing in this situation and that's not accurate. Harvey is and it's very clear and Mr. Humanik has argued this already he is an assignee of the LWDA and as such and under the Sprint Communications Supreme Court case he is actually arguing first party rights not third party rights and that would be sufficient for him to satisfy prudential standing. In addition there is an argument under Magadha where Magadha talks about the state being a and italicizes us a real party and interest there is room that there is more than one real party and interest under that analysis and Mr. Harvey would be a real party and interest and so given this it makes sense that there would be prudential standing under the circumstances of this case. The idea that there could never be article three standing for a PAGO plaintiff puts all defendants in a very difficult position. They have the right in many circumstances such as Morgan Stanley here to be in federal court because of the class claims under COPPA but they're being forced to litigate a PAGO claim in state court which is not consistent with traditional notions of judicial economy the preservation of resources and ensuring that there are not inconsistent rulings between the state and federal court and so given that there are other considerations that should come into play including the public policy considerations of forcing employers such as Morgan Stanley to be litigated in two different forms. I want to touch briefly on supplemental jurisdiction. The court asked some questions about that. I just want to anchor us back into what supplemental jurisdiction really is. We're talking about something that is part of the same case or controversy of course and as the court has noted the question is whether there's a common nucleus of operative fact. The case presented today before you there is certainly a common nucleus of operative fact. We're talking about the exact same alleged conduct. We're talking about the same AFG program in place of Morgan Stanley. There's no allegation that it differs from case to case and we're talking about the same expense reimbursement policies and the same population of financial advisors. It would be inappropriate to not extend supplemental jurisdiction and there's definitely the discretion of the court here to do so again because if we did not extend supplemental jurisdiction there would be judicial inefficiency. There would be duplication of witness time and court time and there would be the risk of inconsistent rulings and it's not there is no requirement that they must be tried together. That is not what Gibbs says. What the requirement is is that they may be tried together and for years and years now since PAGA was first passed back in 2003 they have indeed been tried together and there's no problem with trying them together. As I said it creates a judicial economy and other benefits for all the talked about at the very beginning of his presentation but didn't get to in any real detail other than to argue that Ms. Chen is the quote true proxy of the state of California. There is no such thing as the true proxy of the state of California. That concept was abandoned by Moniz, by Amaro, by these cases that have looked at this issue very closely and that approved settlements of a later PAGA case that closes the door on an earlier PAGA case. So the idea that there was some special right here it just does not exist. As for Mr. Harvey having standing he does. He is an employee or was an employee of Morgan Stanley and he suffered a violation of the labor code and he submitted his notice and the LWDA declined to proceed with investigating and he definitely does have standing. And with that I will stop. Thank you your honors. All right thank you counsel. Mr. Heumannick you had some time left. Thank you your honors. I'm going to start off with the rule 24 issues. It would be an abuse of discretion to deny intervention to Tracy Chen the state's true proxy. Mr. Rubin conceded the standing in the state's shoes to the same degree if not more than Harvey is. And then Mr. Livington says that she already received a full assignment from the LWDA. So that is an additional interest. She suffered precisely if not more the same labor code violations as Harvey. She's entitled to civil penalties to the exact same degree as Mr. Harvey. So there's no doubt that if Mr. Harvey satisfies article 3 standing to bring a state's PAGA claim then the true proxy Chen who was fully and completely assigned prosecutorial authority for it has standing to intervene to protect the state's interest in it. It would be irreconcilable to say that Mr. Harvey can adopt Ms. Chen's PAGA letter in her second amended complaint and release it as settlement. Reaching the merits of that claim and while simultaneously denying her intervention to protect the state's rights. So that's the abuse of discretion here that occurred by the trial court. It had an either or decision. Either dismiss for lack of subject matter jurisdiction for the reasons I already talked about or it erred in not granting intervention to Chen who had already been prosecuting the labor code claims, was on the doorstep of trial, has all of the information and all of the leverage. She has the timely claims. Harvey had no leverage. There was no downside to him bargaining with Chen's claims because they were worth zero dollars and zero cents to Harvey. The only one who had value in those claims was Ms. Chen. Did you object to the district court exercising supplemental jurisdiction over the PAGA claims before the intervention? No, we did not. But the existence of subject matter jurisdiction is a non-waivable defect and this court has an independent obligation to assess subject matter jurisdiction including article 3 standing and supplemental jurisdiction. And we did raise it at final approval as well. And looking at the standards for intervention as of right under rule 24, the first requirement is that your motion to intervene be timely. But here it appears that your motion may not have been timely because you well knew of the Harvey case and the proposed settlement because Chen had been invited to participate in settlement discussions for months before moving to intervene. So why should we conclude that your motion to intervene was timely? It's not knowledge of the litigation, it's when your knowledge of impairment. And that's the Culbers case and the Western Watersheds case, both of which came out at the end of 21 beginning of 2022. And the knowledge of the impairment did not incur until we found out on the eve of trial that Morgan Stanley had agreed to a global settlement disposing of the Chen penalty claims. Prior to that point, Mr. Livingston said under oath in front of the district court that those 13-month period, we haven't settled those yet. And we stood up on behalf of the Chen plaintiffs and said, he only has no authority for that 13-month period. He doesn't have any authority beyond the first 12 months before he filed the Paga claim given the four corners of notice and the omnibus one-year statute of limitations. So as soon as we found out what they had done, we promptly moved to intervene. So I would point the court to Culbers and Western Watersheds. It's when the impairment is found. And there was no prejudice to the settling parties regardless. So the other requirement is that you have a significant protectable interest. And it seems that as you refer to Ms. Chen as the true proxy, the state's true proxy that you believe she had some sort of property interests or some sort of vested interest in the Paga claim. But how do we reconcile that with Amaro and other California decisions saying that the Paga representatives have no interest in the claim? Well, that issue is currently in you do have a sufficient protectable interest as an effective advocate for the state. In the Turrieta case, which is up on appeal right now is addressing that very issue. So there's a conflict within the California courts of appeal. And courts have come out on both sides that Uribe said, yes, you can intervene. And if your claim is at risk of res judicata, then yes, you would be aggrieved by that settlement. So you have a right in that regard as well. So you have Uribe and Moniz on one side. Wait, her claims were not at risk of res judicata because her individual claims would not be affected by the Paga settlement. It's the state's claim. And it's her role as an effective advocate as a proxy for the state to protect the state's interests. And that's the Didn't you say that the Paga representatives have no interest? They have no injury. So how could she have an interest in the Paga settlement? You're absolutely correct. There's a difference between the protectable interest under article three versus her interest as a to bring a procedural claim as an administrative action on behalf of the state and state court. And that's the Paga objector, just like any Paga plaintiff has no protectable interest to even bring a Paga claim in federal court. Because if Harvey has an interest to bring it, then Chen must have the same interest in the Paga claim to protect it as well on behalf of the state. So if Harvey has article three standing in his own individual right to act as a private attorney general in federal court, so does Chen. And Chen actually has the greater right, both under a first filed analysis primary rights doctrine. And I could go on and on. And as an effective advocate for the state, if she has a contractual assignment of the claim, as Mr. Livingston alluded to, that's a property right. So she would also have that property right in the assigned claim that was fully and completely assigned to her in order to say, hey, you cannot compromise that right in federal court when it's already been previously assigned to me for prosecution. And I've been doing it for four plus years. All right, counsel, let's move on to the appeal of issues related to the approval of the settlement. And I guess we have an additional attorney. Let's see. So I get, I gather, Mr. Heumannick, you want to go first on this?
judges: WARDLAW, IKUTA, BADE